# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
BOBBY DAVIDSON,               :
                              :
        Plaintiff.            :
                              :
v.                            :   CASE NO. 3:08CV00971(AWT)
                              :
CITY OF BRIDGEPORT, CITY OF   :
BRIDGEPORT POLICE DEPARTMENT, :
BRYAN T. NORWOOD, MARK        :
RUBINSTEIN, and CONCENTRA     :
INTEGRATED SERVICES, INC.,    :
                              :
        Defendants.           :
------------------------------x
```

## **RULING ON MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Bobby Davidson ("Davidson"), brings this action against the City of Bridgeport (the "City"), the City of Bridgeport Police Department (the "Department") and Chief of Police Bryan T. Norwood ("Chief Norwood") (collectively the "Defendants"), and Mark Rubinstein ("Rubinstein").[1] The Defendants have moved for summary judgment on all claims against them. The First Count sets forth a common law claim for violation of the right to privacy; the Fourth Count sets forth a claim for intentional infliction of emotional distress; the Fifth Count sets forth a claim for negligent infliction of emotional distress; the Tenth Count sets forth a claim for violations of 42 U.S.C. § 1983 against Chief Norwood; and

---

[1] Defendant Mark Rubinstein has filed a separate motion for summary judgment on the claims against him. Defendant Concentra Integrated Services, Inc. ("Concentra") has been dismissed from the case in accordance with a stipulation of dismissal.

-1-

the Eleventh Count sets forth a Monell claim against the City and the Department. For the reasons set forth below, the motion for summary judgment is being granted.

I.  **FACTUAL BACKGROUND**

In January 2005, Davidson, who was a sergeant in the Department, took sick and injury leave due to neck and back injuries. He was later diagnosed with a herniated disk in his neck, requiring surgery, which he underwent in late 2005. Davidson remained out on injury leave due to this medical condition. During this time, an internal affairs investigation was commenced by the Department because of an allegation that Davidson had engaged in wrongdoing by making an inappropriate comment to a coworker. On May 19, 2006, a disciplinary hearing about the allegation was held. It ended abruptly after Davidson reportedly began to behave in a way that caused some of the police officers at the hearing to be concerned.

Based upon the incident at the disciplinary hearing, on June 2, 2006, Chief Norwood advised Davidson, by way of a letter, that he had to undergo an independent medical evaluation before returning to work. The Department utilizes Concentra, a national health care company, to arrange for an independent medical examination ("IME"). On June 21, 2006, Chief Norwood corresponded with Rubinstein, a psychiatrist retained by Concentra to perform an IME on the plaintiff, stating that:

> The Bridgeport Police Department requested an independent medical examination of Sgt. Bobby

> Davidson after observing his behavior in the course of a conversation regarding a pending discipline matter. Several employees who witnessed and/or participated in the conversation raised concerns in relation to Sgt. Davidson's conduct. Your assistance in this matter will be appreciated.

(Pl.'s Opp. Mot. Summ. J. (Doc. No. 101) ("Opp."), Ex. K.) However, the notice Davidson received of the scheduled IME gave no indication that Davidson's scheduled appointment was related to a psychiatric evaluation. The notice read: "The above referenced claims processing company has requested and authorized Concentra Integrated Services to schedule an independent medical examination in connection with the above referenced incident." (Id. at Ex. C.) The "above-referenced incident" appeared to refer to the header of the letter which lists the "Date of Incident" as "01/01/2006." (Id.) The letter instructed Davidson to "bring any X-rays, CT scans, MRI studies and/or other medical records pertaining to your injury to the exam." (Id.)

On the date of the IME appointment, Davidson was under the mistaken impression that the IME had been scheduled for issues relating to his herniated disk, for which he was still out on injury leave. After discovering that Rubinstein was a psychiatrist, Davidson terminated the examination.

Davidson thereafter contacted the Department and objected to a psychiatric evaluation as he felt there was no basis for him to undergo one. Davidson also retained an attorney to assist him in the matter. His attorney then sent a letter to the Department

inquiring as to why a psychiatric examination was being required of Davidson. Davidson later received correspondence from Sergeant J. A. Hernandez ("Hernandez"), who was present at Davidson's disciplinary hearing, which read:

> Chief Norwood is genuinely concerned for your well being and has instructed me to re-schedule an Independent Medical Exam for you with the understanding that you are being examined by a Psychiatrist.
>
> I have been asked to advise you that this exam is not voluntary on your part and your presence is required as per department policy 3.13.

(Id. at Ex. E.) The letter informed Davidson that a second IME appointment had been scheduled with Rubinstein for Friday, July 7, 2006. In addition, Hernandez sent a letter to Rubinstein apologizing for the sudden departure of Davidson from the initial IME appointment. The letter went on to elaborate the concerns of the Department and indicated, with respect to the disciplinary hearing, that:

> As the investigation was being conducted, it became apparent that Sgt. Davidson was overly obsessed and consumed by the case. Based on personal observation, it appears he is suffering [from] bouts of paranoia, depression, and anxiety. During testimony, he displayed extreme difficulty articulating any coherent statements. After the result of the case was not to his liking, Sgt. Davidson began suffering even more so and genuinely believes that a conspiracy has occurred and seeks remedies outside the normal functions of the department.

(Id. at Ex. M.) Chief Norwood also sent a letter to Rubinstein further explaining his personal concerns about Davidson. The letter stated:

>     . . . I became very concerned about Sgt.
>     Davidson's well being. Based on my personal
>     observation, Sgt. Davidson appeared to be
>     suffering from extreme paranoia, anxiety and
>     depression. He also displayed extreme
>     difficulty articulating his statements in a
>     coherent manner. Based on the above stated
>     observations, it is my recommendation that Sgt.
>     Davidson be evaluated to determine his fitness
>     for duty. . . .

(Id. at Ex. L.)

On July 7, 2006, Davidson kept the second scheduled IME appointment and cooperated in Rubinstein's psychiatric evaluation. On the same day, Rubinstein prepared an IME report. His IME report notes: "Sgt. Davidson was informed that this was an independent psychiatric evaluation as requested by the City of Bridgeport, Department of Police. He was informed that a report would be sent to Concentra and that there was no doctor-patient relationship and no confidentiality existed between us." (Id. at Ex. H, p.2.) Davidson was aware that Rubinstein would be creating a report regarding the visit and that the report would be given to the Department. (See Defs.' Mot. Summ. J. (Doc. No. 72) ("Supp."), Ex. 7, Davidson Dep. 88:7-89:20, July 14, 2009.) At no time was Davidson presented with, nor did he sign, a written waiver authorizing release of Rubinstein's IME report to a third party.

Rubinstein's IME report ultimately concluded that based upon Davidson's behavior during the psychiatric examination: "[o]n a psychiatric basis, it is impossible to envision Officer Davidson returning to work in the Bridgeport Police Department." (Opp. at Ex. H, p.10.) Rubinstein mailed his IME report to Concentra, which

in turn forwarded it on to the City.  On October 6, 2006, Davidson received correspondence from Hernandez, which read:

> As a result of the findings in your recent independent medical exam(s), Chief Norwood has decided to invoke his rights under the departments sick and injury policy, rule 3.13.19 and article 42, and seek your retirement by the Honorable Board of Police Commissioners.

(Id. at Ex. I.)  On November 28, 2006, the Board of Police Commissioners (the "Board") held a meeting and reviewed a letter sent by the City's attorney with respect to Davidson.  The letter detailed Davidson's medical conditions through excerpts of Davidson's IMEs performed by two doctors in the summer of 2006, one of which was that performed by Rubinstein.  The City's attorney identified Davidson's medical conditions as, with respect to a neurological IME, "degenerative disk disease and cervical spondylosis" with various physical limitations stemming from that, and with respect to the psychiatric IME, "a Delusional Disorder characterized by feeling of persecution . . ."  (Id. at Ex. P.) The letter also informed the Board that:

> in order to retire Sgt. Davidson the Police Pension Board must determine whether he is permanently disabled from performing his duties, and if so whether that is a result of orthopaedic injuries received on the job (service connected pension), degenerative disease (non-service connected pension), or service or non-service connected psychiatric disease.

(Id.)

Shortly thereafter, on December 1, 2006, a Departmental Order from the Department and Chief Norwood was issued on retirements,

-6-

and read in part: "At the Board of Police Commissioners meeting held on November 28, 2006, the Board voted to approve my requests for a service connected disability retirement for Sgt. Bobby Davidson . . ." (Id. at Ex. J.) This notice effected Davidson's involuntary retirement.

**II.  LEGAL STANDARD**

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

facts are jury functions, not those of the judge." Anderson, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not

prevent summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (internal quotation marks omitted) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which [a] jury could reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Celotex Corp., 477 U.S. at 324. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," Weinstock, 224

F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial." Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)(quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted.

### III. DISCUSSION

The court notes that the Department is not a legal entity subject to suit and therefore is not a proper party to this action. See Marinella v. Town of Darien, No. 3:07-cv-910 (CFD), 2010 WL 3123298, at *4 (D. Conn. August 9, 2010).

#### A. Tenth Count: § 1983 Violations against Chief Norwood

In the Tenth Count, the plaintiff alleges four constitutional violations that serve as the basis for his § 1983 claim. The plaintiff claims a violation of the Fourth, Fifth, Eighth and Fourteenth Amendments which stem from Chief Norwood's conduct when he required the plaintiff to undergo a psychiatric examination as a condition of keeping his job and/or continuing employment, and he then obtained the results of the psychiatric IME.

Chief Norwood contends that the plaintiff knew that the Defendants had an interest in his medical well-being and that the

medical report was being provided to and fully disclosed to the Defendants. The plaintiff contends that he did not know that Rubinstein's records or reports would be disclosed to the City, and that he had a reasonable expectation that his forced communications with Rubinstein would remain confidential, especially since he had not provided a written authorization of release.

"The cases . . . protecting 'privacy' have . . . involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." Whalen v. Roe, 429 U.S. 589, 598-99 (1977).

The plaintiff testified to the following at his deposition, with respect to the IME conducted by Rubinstein: he made the decision to take the IME instead of losing his job; he knew that Rubinstein was a psychiatrist when he attended the second scheduled doctor's appointment; he knew he was going to undergo an IME ordered by the City; he knew that generally IMEs resulted in a report that would be provided to the City; and he knew that Rubinstein would prepare a report that would be provided to the City. In addition, Rubinstein's report states that the plaintiff "was informed that this was an independent psychiatric evaluation as requested by the City of Bridgeport, Department of Police. [The plaintiff] was informed that a report would be sent to Concentra and that there was no doctor-patient relationship and no confidentiality existed between us." (Opp. at Ex. H, p.2.)

The plaintiff's constitutional claims in the Tenth Count against Chief Norwood are all premised on Chief Norwood violating the plaintiff's right to privacy. However, the undisputed evidence reflects that the plaintiff was aware during his IME that Rubinstein was going to disclose, in a report, the results of the IME to the City, but proceeded with the IME anyway. Thus, the plaintiff waived his right to privacy. Therefore, there are no genuine issues of material fact with respect to the plaintiff's federal claims in the Tenth Count because there was no right to privacy. Accordingly, the motion for summary judgment is being granted as to this count.

**B.   Eleventh Count: § 1983 Monell Claim against City**

"In [Monell v. Department of Social Services, 436 U.S. 658 (1978),] the [United States] Supreme Court ruled for the first time that municipalities were liable under § 1983 to be sued as 'persons' within the meaning of that statute, when the alleged unlawful action implemented or was executed pursuant to a governmental policy or custom." Reynolds v. Giuliani, 506 F.3d 183, 190 (2d Cir. 2007). "A municipality and its supervisory officials may not be held liable in a § 1983 action for the conduct of a lower-echelon employee solely on the basis of respondeat superior. . . . In order to establish the liability of such defendants in an action under § 1983 for unconstitutional acts by such employees, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy."

-12-

Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 122 (2d Cir. 1991)(citation omitted).

However, because the court has determined that there was no constitutional violation, there can be no Monell violation. See Martinez v. City of New York, 340 Fed. Appx. 700, 702 (2d Cir. 2009)("Because [the defendants] did not violate plaintiff's constitutional rights, there can be no municipal liability even if plaintiff had alleged a specific policy or custom . . ."). Accordingly, the motion for summary judgment is being granted as to this count.

**C.   First, Fourth and Fifth Counts: State Law Claims against the Defendants**

The plaintiff sets forth state law claims for violation of his right to privacy, intentional infliction of emotional distress, and negligent infliction of emotional distress, respectively, in the First, Fourth and Fifth Counts.[2] The court declines, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction, and these claims are dismissed. See Valencia ex rel. Franco v. Lee, 316 F. 3d 299, 305 (2d Cir. 2003)("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-

---

[2] In addition, the only remaining claims against defendant Rubinstein are state law claims as to which the court is also declining to exercise jurisdiction.

-13-

law claims.")(quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

**IV. CONCLUSION**

For the reasons set forth above, Defendants City of Bridgeport, City of Bridgeport Police Department and Bryan T. Norwood's Motion for Summary Judgment (Doc. No. 72) is hereby GRANTED.

The Clerk shall enter judgment accordingly in favor of defendants the City of Bridgeport, the City of Bridgeport Police Department and Bryan T. Norwood, and close this case.

It is so ordered.

Dated this 31st day of March 2011, at Hartford, Connecticut.

                                                 /s/AWT
                                           Alvin W. Thompson
                                  United States District Judge